NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JEFFREY W.E. MAYER, et al., | : | |
| Plaintiffs, | : | Civ. No. 21-12393 (CCC) (MAH) |
| v. | : | |
| NEW JERSEY DEPARTMENT OF HEALTH, et al., | : | OPINION |
| Defendants. | : | |

**CECCHI, District Judge.**

The plaintiffs are 38 civil detainees (together "Plaintiffs") at the New Jersey Special Treatment Unit ("STU") in Avenel, New Jersey, confined pursuant to the New Jersey Sexually Violent Predators Act. They seek to jointly pursue a civil rights claim pursuant to 42 U.S.C. § 1983 against four defendants—the New Jersey Department of Health ("NJDOH"), the New Jersey Department of Corrections ("NJDOC"), the New Jersey Attorney General ("NJAG"), and the "Department of Human Services"[1]—based on allegedly unconstitutional conditions of confinement at STU. ECF No. 1. In addition, (1) Plaintiffs seek to proceed *in forma pauperis* ("IFP"), having each submitted individual IFP applications (ECF Nos. 1-3 through 1-41); and (2) Plaintiff Hann seeks appointment of pro bono counsel (ECF No. 21). For the reasons below, the Court will deny the IFP motions and dismiss the complaint, without prejudice, under 28 U.S.C. §§ 1915(a) and 1915(e)(2)(B) for failure to state a claim, and deny the motion for appointment of counsel without prejudice.

---

[1] Based on the Washington, D.C., address listed in the complaint, the Court presumes that Plaintiffs intended to sue the federal Department of Health and Human Services ("HHS").

I. **IFP APPLICATIONS**

The *in forma pauperis* statute, 28 U.S.C. § 1915, "ensure[s] that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989) (citation omitted). It provides that the Court "may" authorize the commencement of a civil action "without prepayment of fees" if the movant is "unable to pay," 28 U.S.C. § 1915(a)(1), but, to protect against abusive applications, also provides that the Court "must" dismiss an action that is frivolous, malicious, or fails to state a claim. 28 U.S.C. § 1915(e)(2)(B); *see also, e.g.*, *Vora v. Michaels*, 613 F. App'x 132, 133 (3d Cir. 2015) (IFP action must be dismissed if the district court "determines that it, *inter alia*, fails to state a claim upon which relief can be granted") (citing 28 U.S.C. § 1915(e)(2)(B)(ii)). The IFP statute applies to complaints filed both by prisoners and non-prisoners. *See, e.g.*, *Hickson v. Mauro*, No. CIV.A. 11-6304 NLH, 2011 WL 6001088, at *1 (D.N.J. Nov. 30, 2011) ("Federal courts apply Section 1915 to non-prisoner IFP applications."); *Tabaka v. Leyre*, No. 20-CV-06600 (BRM) (JAD), 2021 WL 5506910, at *2 n.1 (D.N.J. Nov. 24, 2021) (noting that § 1915 applies to non-prisoners); *Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1312 (10th Cir. 2005) ("Section 1915(a) applies to all persons applying for IFP status, and not just to prisoners.").

Consideration of IFP motions is not a rigid process; the Court need not first consider ability to pay under § 1915(a) and then the merits under § 1915(e)(2). Rather, "a court has the authority to dismiss a case 'at any time,' 28 U.S.C. § 1915(e)(2), regardless of the status of a filing fee; that is, a court has the discretion to consider the merits of a case and evaluate an IFP application in either order or even simultaneously." *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019); *see also Abbott v. Fed. Bureau of Prisons*, No. 21-1026, 2021 WL 5002691, at *1 (D.N.J. Oct. 28, 2021) ("'[A] court has the authority to dismiss a case 'at any time' . . . regardless of the status of a filing

fee.'  Thus, the Court will screen the complaint for dismissal prior to Plaintiff's submission of a revised IFP application.") (quoting *Brown*, 941 F.3d at 660).

Employing this "flexible approach," *Brown*, 941 F.3d at 660, the Court determines that this is a case in which it makes sense to assess the merits under § 1915(e) rather than determine the financial eligibility of 38 individual plaintiffs.[2]  The latter is not necessary here because, as explained below, the complaint fails to name any defendant who can be held liable for alleged conditions of confinement, and thus fails to state a claim upon which relief can be granted and must be dismissed under § 1915(e)(2)(B).  *Brown*, 941 F.3d at 660 (court can dismiss case under § 1915(e)(2)(B) "at any time").

## II. SCREENING

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)."  *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).  That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To survive screening, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Fair Wind*

---

[2] Although the Court is not ruling on the 38 plaintiffs' financial eligibility to proceed IFP, the Court has reviewed the motions and notes that the financial eligibility of many of the plaintiffs is not at all clear. Some of the plaintiffs, for example, submitted documents indicating account balances of several thousand dollars.  *See, e.g.*, ECF No. 1-12 (showing average monthly balance in excess of $4,000); ECF No. 1-18 (average monthly balance of approximately $14,000); ECF No. 1-39 (average monthly balance of more than $30,000).  Other plaintiffs submitted documents showing low balances but also indicating that they had spent substantial sums in the months preceding the filing of the lawsuit.  The Court need not resolve these issues now but will address any deficiencies if and when Plaintiffs refile.

*Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings must be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). "A *pro se* plaintiff's well-pleaded complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a 'short and plain' statement of a cause of action." *Johnson v. Koehler*, No. 18-00807, 2019 WL 1231679, at *3 (M.D. Pa. Mar. 15, 2019).

### A. Section 1983

Construing the complaint liberally, Plaintiffs appear to assert claims for unconstitutional conditions of confinement arising out of, *inter alia*, alleged inadequate access to therapeutic treatment (ECF No. 1 at 9); improper use of administrative segregation (ECF No. 1-1 at 3); and detention in a facility with: leaks, rodents, mold, cold showers, food shortages, spoiled food, and a lack of recreation facilities; broken phones, sinks, and toilets; and poor lighting, television reception, plumbing, heating, air conditioning, and ventilation (*id.* at 2–6). Plaintiffs seek to hold NJDOH, NJDOC, NJAG, and HHS liable for the alleged unconstitutional conditions.

#### a. Applicable Standard

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

4

> Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

A supervisor may not be held vicariously liable for the actions of his or her subordinates. *See, e.g., Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Rather, to adequately plead a § 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor had personal involvement in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). There are two theories of supervisory liability. Under the first, a plaintiff must plausibly allege that the supervisor enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation. *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010). Under the second, a plaintiff must plausibly allege that the supervisor "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).

5

"Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.

Civil detainees such as Plaintiffs here "are entitled to due process and may bring conditions of confinement claims under the Due Process Clause of the Fifth (or Fourteenth) Amendment as opposed to the Eighth Amendment." *Kolawole O.T. v. Ahrendt*, 466 F. Supp. 3d 457, 468 (D.N.J. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535–36 (1979)); *E.D. v. Sharkey*, 928 F.3d 299, 306–07 (3d Cir. 2019)). The Due Process Clause of the Fourteenth Amendment affords protections to detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner," *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003), and is violated when a detainee is subjected to punishment that is not reasonably related to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga*, 806 F.3d at 226 (cleaned up); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A failure to provide minimally civil conditions of confinement violates a detainee's rights against punishment without due process of law. *See Roman v.*

6

*DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (internal citation and quotation marks omitted). To meet the subjective component, a detainee must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter,* 501 U.S. 295, 298–99 (1991); *Stevenson*, 495 F.3d at 68 ("a particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose") (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)).

      **b. Application**

Plaintiffs' complaint, which addresses substandard conditions of confinement, fails to plausibly allege deliberate indifference because it does not connect the purported wrongdoing to a "person acting under color of state law," as § 1983 requires. *Harvey*, 635 F.3d at 609.

To the extent Plaintiffs sue the NJAG in his personal capacity, they have failed to allege the requisite personal involvement. *See Talley v. Savage*, No. 22-4186, 2022 WL 17573403, at *5

7

(E.D. Pa. Dec. 8, 2022) ("Talley has failed to allege that Attorney General Shapiro was personally involved in any of the relevant events, as is necessary to state a claim against him"); *Bartley v. New Jersey*, No. 18-16283, 2021 WL 3884289, at *5 (D.N.J. Aug. 31, 2021) ("Plaintiff may not base his claims against the Attorney General . . . in [his] personal capacit[y] strictly on a theory of respondeat superior.") (citing *Chavarriaga*, 806 F.3d at 222). To the extent Plaintiffs bring official-capacity claims against the NJAG, as explained below, the NJAG is immune from suit.

The Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction" over actions against a state. *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013). The state's immunity from suit also extends to "arms" of the state, such as agencies or departments. *Id.* State officials are also entitled to immunity from suit for monetary damages when acting in their official capacities. *Stephens v. Kenney*, 802 F. App'x 715, 719 (3d Cir. 2020); *A.W. v. Jersey City Pub. Sch.*, 341 F.3d 234, 238 (3d Cir. 2003). These principles are consistent with the interpretation of a "person" under Section 1983: "neither a State nor its officials acting under their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, Plaintiffs' claims against the NJDOC, NJDOH, and the NJAG acting in their official capacities are dismissed for lack of subject matter jurisdiction. *See Franklin v. Middlesex Water Co.*, No. 22-1718, 2022 WL 12998615, at *3 (D.N.J. Oct. 21, 2022) ("Courts have consistently held that the NJDOC and its subsidiaries are entitled to Eleventh Amendment immunity."); *Clark v. State of N.J. Dep't of Health*, No. 12-7763, 2016 WL 4265724, at *4 (D.N.J. Aug. 12, 2016) ("[T]he Third Circuit has long held that [NJ]DOH is an arm of the State of New Jersey for sovereign immunity purposes," and thus, is "immune from suit under the Eleventh Amendment."); *Ehrlich v. Alvarez*, No. 20-6398, 2021 WL 2284108, at *6

(D.N.J. June 4, 2021) ("Plaintiff's Section 1983 claims for damages against . . . Attorney General Grewal are barred by the doctrine of sovereign immunity.").

Finally, HHS, a federal agency, operates under federal, not state, law and is thus immune from lawsuits brought pursuant to § 1983 (and its federal analog, *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 38 (1971)). *Ponton v. AFSCME*, 395 F. App'x 867, 872 (3d Cir. 2010) ("§ 1983 does not provide for liability against federal agencies acting under color of federal law."); *Hindes v. F.D.I.C.*, 137 F.3d 148, 158 (3d Cir. 1998) ("[F]ederal agencies and officers are facially exempt from section 1983 liability inasmuch as in the normal course of events they act pursuant to federal law."); *Wooten v. U.S. Dep't of Health & Hum. Servs.*, No. 10-3728, 2011 WL 536448, at *6 (S.D.N.Y. Feb. 15, 2011) ("Because HHS has never waived sovereign immunity, this Court lacks subject matter jurisdiction over HHS on plaintiff's *Bivens* claim."). Accordingly, Plaintiffs' claims against HHS are dismissed for lack of subject matter jurisdiction.

### III.     SUBSEQUENT FILINGS

Plaintiffs cannot proceed against the defendants they have sued, as they must identify individuals or entities who acted under color of state law and who can be held liable under 42 U.S.C. § 1983. Since Plaintiffs have not done so, the complaint in its current form must be dismissed. Plaintiffs will be granted leave to file an amended complaint within 60 days. If Plaintiffs do file an amended complaint, they must either pay the full filing fee, or again submit individual motions to proceed IFP. If the amended complaint identifies proper defendants and states valid claims, and if any Plaintiffs again move for IFP status, the Court will at that time address Plaintiffs' financial eligibility.

Finally, Plaintiffs are advised that any amended complaint must comply with the rules applicable to joinder of claims and parties.[3] Federal Rule of Civil Procedure 20 governs the permissible joinder of plaintiffs. Rule 20 states in relevant part:

(1) Plaintiffs. Persons may join in one action as plaintiffs if:

(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1). "The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy." *Thomas v. Johnson*, No. 12-6379, 2014 WL 2558976, at *4 (D.N.J. May 30, 2014). For screening purposes, the Court assumes without deciding that joinder is appropriate. *See, e.g.*, *Hennessey v. Atl. Cnty. Dep't of Pub. Safety*, No. 06-143, 2006 WL 2711510, at *5 (D.N.J. Sept. 18, 2006) (permitting joinder where: (1) the action "involving the general conditions of confinement at ACJF, as it applies to all inmates and detainees at ACJF, may be addressed more efficiently in one action rather than numerous individual cases"; (2) "[t]he investigation, discovery, and evidential proofs would apply to all plaintiffs"; (3) "joinder of the parties and their conditions of confinement claims promotes judicial economy"; and (4) "the claims involve common questions of law and fact against the same defendants"). However, Plaintiffs are advised that any amended pleading must meet the requirements of Rule 20.

---

[3] The court notes that Plaintiff Hann has filed a new letter each time a new issue arises. ECF Nos. 3–20, 22–32. However, "the Federal Rules of Civil Procedure do not contemplate piecemeal pleadings or the amalgamation of pleadings, even in the context of a *pro se* litigant." *Perry v. Paolillo*, No. 22-CV-1872, 2022 WL 2209288, at *1 (E.D. Pa. June 21, 2022). If Plaintiffs choose to amend the complaint, all allegations must be included in the amended complaint.

10

## IV.  CONCLUSION

For the reasons set forth above:  (i) Plaintiffs' IFP applications (ECF Nos. 1-3 through 1-41) are denied without prejudice; (2) Plaintiff Hann's motion for appointment of counsel (ECF No. 21) is denied without prejudice; and (3) the complaint (ECF No. 1) is dismissed without prejudice.  Plaintiffs are granted 60 days from the date of this Opinion to file an amended complaint against a viable defendant.  An appropriate order follows this Opinion.


DATED:  March 15, 2023

                                                                s/ Claire C. Cecchi
                                              **CLAIRE C. CECCHI, U.S.D.J.**